

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 28, 2022

<u>**BY ECF**</u>
The Honorable J. Paul Oetken
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

   Re: <u>United States</u> v. <u>Elijah Bilal</u>,
      19 Cr. 565 (JPO)

Dear Judge Oetken:

   The Government respectfully submits this letter in response to defendant Elijah Bilal's (the "defendant") opposition to the Government's motion *in limine* seeking to admit certain statements made to two cooperating witnesses ("CW-1" and "CW-2," respectively) as statements against penal interest. (Dkt. No. 31). Bilal opposes the admission of these statements arguing that (i) the Government has failed to establish that the underlying declarants are unavailable; and (ii) even if unavailable, the Government has failed demonstrate that the statements possess sufficient indicia of reliability. (Dkt. No. 34). For the reasons discussed below, and in the Government's motion *in limine* dated December 1, 2021, the Court should grant the Government's motion and admit the statements in question as statements against penal interest pursuant to Federal Rule of Evidence 804(b)(3) or, in the alternative, as co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E).

I.  <u>The Statements in Question</u>

   By way of background, the Government intends to offer the following statements at trial:

- Statements made by Co-Conspirator1, a fellow member of the underlying drug trafficking organization (the "DTO"), through the testimony of CW-1 and CW-2. Specifically, CW-1 will testify that, a few days after the murder, CW-1 had a conversation with Co-Conspirator-1 during which Co-Conspirator-1 explained, in sum and substance, that Co-Conspirator-1 and the Victim confronted the defendant and Co-Conspirator-2 because the defendant and Co-Conspirator-2 owed them money for drugs. Similarly, CW-2 will testify that he also had a conversation with Co-Conspirator-1 a few days after the murder. CW-2 will explain that, during that conversation, Co-Conspirator-1 again explained, in sum and substance, that, on the night of the murder, Co-Conspirator-1 and the Victim confronted the defendant and Co-Conspirator-2 over drug money.

- Statements made by Co-Conspirator-2, a member of the DTO, through the testimony of CW-1. CW-1 will explain that CW-1 was a member of the MacBallas along with the Victim and that CW-1 intended to retaliate for the Victim's murder. Several months after the murder, CW-1 confronted Co-Conspirator-2 in the lobby of a residential building after learning that Co-Conspirator-2 had been seen in the area. CW-1 will testify that Co-Conspirator-2 was armed during the confrontation and, when asked about the murder, explained, in sum and substance, that Co-Conspirator-2 was present when the murder happened.[1]

## II.    Co-Conspirator-1 and Co-Conspirator-2 are Unavailable

As an initial matter, the defendant is correct that, for an out-of-court statement to be admissible for its truth as a statement against penal interest, the declarant must be unavailable. Fed. R. Evid. 804(b)(3). Where the defendant is incorrect, however, is in his claim that the Government has failed to demonstrate that *Co-Conspirator-1 and Co-Conspirator-2* are unavailable. "Rule 804 contemplates a more flexible approach to the admission of hearsay statements by an unavailable declarant. It allows the court to deem a declarant 'unavailable' if the declarant 'is exempted from testifying about *the subject matter of the declarant's [hearsay] statements* because the court rules that a privilege applies." *Davis v. Velez*, 15 F. Supp. 3d 234, 248 (E.D.N.Y. 2014) (citing Fed. R. Evid. 804(a)(1)) (emphasis in original). Here, as in *Velez*, "it is plain that the privilege against self-incrimination would apply to the general subject matter" of Co-Conspirator-1 and Co-Conspirator-2's statements. As described in the Government's motion, their statements make clear their involvement in the underlying narcotics conspiracy that led to the Victim's murder – a narcotics conspiracy and subsequent murder for which neither has been charged.

To combat this, the defendant argues that neither declarant is unavailable because any charges they might face are likely barred by the statute of limitations. This is inaccurate because the declarants face liability for the Victim's death, a crime for which there is no statute of limitations. Liability for the Victim's death under Title 18, United States Code, Section 1111, does not require a finding that either declarant personally fired the fatal shot that killed the Victim. The federal felony murder statute contains no requirement that the Government show premeditation or even direct participation by the defendant. *See United States v. Thomas*, 34 F.3d 44 (2d Cir. 1994) (holding that "[o]nce a conspiracy is established, the liability of defendants extends to all acts of wrongdoing occurring during the course of and in furtherance of the conspiracy"). Here, Co-Conspirator-1 and Co-Conspirator-2, both of whom were participants in the underlying narcotics conspiracy (a felony), were involved in an assault over drug money during which the Victim was shot and killed. Accordingly, while there is no allegation that either declarant shot and killed the Victim, it is not true that they have no criminal exposure. To the contrary, their criminal exposure is quite serious and would likely result in their decision to invoke their Fifth Amendment rights against self-incrimination. For this reason, they are properly considered "unavailable" for purposes of admitting their statements against penal interest.

---

[1]    We note that the defendant does not oppose the admission of certain statements made by the Victim to CW-2 prior to the murder as outlined in the Government's motion.

III.    Co-Conspirator-1 and Co-Conspirator-2's Statements are Reliable

In *United States v. Sasso*, the Second Circuit set forth several factors that district court's may consider in determining whether a statement against penal interest carried sufficient indicia of reliability so as to warrant its admission into evidence. 59 F.3d 341 (2d Cir. 1995). The Court in *Sasso* found that statements against penal interest are likely to be trustworthy where: (1) the declarant equally inculpates himself along with the defendant and does not engage in blame-shifting or role-minimizing; (2) there is no apparent self-interested motive for the declarant to inculpate the defendant; (3) there is no coercion present; and (4) there is no apparent attempt to curry favor with the authorities (*i.e.,* the statement was made in a private setting and/or to a friend or ally). *Id*. at 349-50. Co-Conspirator-1 and Co-Conspirator-2's statements satisfy several of these factors.

With respect to Co-Conspirator-1, Co-Conspirator-1 directly implicates himself in the underlying narcotics conspiracy when he admits that he and the Victim confronted the defendant and Co-Conspirator-2 to collect drug money. Co-Conspirator-1's statement does not suggest that the Victim was more culpable or played a larger role in the conspiracy and/or confrontation. Rather, Co-Conspirator-1's statement makes clear that Co-Conspirator-1 and the Victim approached the defendant with the same goal in mind – to collect drug money they believed was owed to them. In addition, the defendant has not – indeed cannot – argue reasonably that Co-Conspirator-1's statements were self-interested or were the result of coercion. To be sure, Co-Conspirator-1's statements were made in casual, private conversations absent any pressure or duress that would have caused Co-Conspirator-1 to feel coerced. Finally, it is also clear from the circumstances of the conversation that Co-Conspirator-1 was not attempting to curry favor with law enforcement. In addition, the Government will offer other trial evidence that will provide substantial corroboration for Co-Conspirator-1's statements, including, among other things, testimony from several other witnesses regarding (i) Co-Conspirator-1's presence at the location of the murder; (ii) the fight between Co-Conspirator-1 and the Victim and the defendant and Co-Conspirator-2; (iii) Co-Conspirator-1's involvement in the distribution of narcotics along with the Victim more broadly; and (iv) the defendant subsequently arming himself and shooting the Victim after the confrontation. Furthermore, the very fact that Co-Conspirator-1 implicates himself in an ongoing conspiracy to distribute narcotics demonstrates the statement's reliability. Co-Conspirator-1 had no reason to lie about his involvement, because doing so could unnecessarily expose him to serious criminal charges.

Co-Conspirator-2's statements are equally reliable. Co-Conspirator-2 places himself at the scene of a drug-related homicide and, in doing so, confirms his involvement in a dispute over drug proceeds. This is consistent with additional testimony the Government will present at trial regarding Co-Conspirator-2's drug dealing. At trial, the Government expects to call witnesses who personally observed Co-Conspirator-2 selling narcotics in and around the Melrose and Jackson housing developments along with the defendant. Furthermore, Co-Conspirator-2 says nothing about the relative culpability of other participants, but rather, only implicates himself. Again, there can be no self-interested motive for Co-Conspirator-2 to make these statements because they too expose him to criminal charges. In addition, there can be no argument that Co-Conspirator-2 was coerced into making the statement. As discussed above, CW-1 will testify that Co-Conspirator-2 was *armed* during this conversation and, thus, could not have felt compelled or coerced to speak

with CW-1 at all about what happened. And finally, nothing about this conversation suggests that Co-Conspirator-2 was attempting to curry favor with authorities. According to CW-1, this conversation happened in the lobby of a residential building and there is no indication that anyone else was present.

For these reasons, Co-Conspirator-1 and Co-Conspirator-2 are in fact unavailable, their statements are reliable, and, as a result, they are admissible as statements against penal interest.

## IV.     Co-Conspirator-1's Statement is also Admissible as a Statement of a Co-Conspirator

Rule 801(d)(2)(E) of the Federal Rules of Evidence provides in relevant part that "[a] statement is not hearsay if . . . the statement is offered against an opposing party and was made by the party's co-conspirator during and in furtherance of the conspiracy." To admit a statement pursuant to this rule, a district court must find two facts by a preponderance of the evidence: *first*, that a conspiracy that included the defendant and the declarant existed; and *second*, that the statement was made during the course and in furtherance of that conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999).

Although admissible co-conspirator statements are limited to those made "in furtherance" of the conspiracy, this standard is not unduly restrictive. It permits introduction of any co-conspirator statement that "reasonably [can] be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy." *United States v. Tarantino*, 846 F.2d 1384, 1412 (D.C. Cir. 1988). Statements between co-conspirators that "provide reassurance, serve to maintain trust and cohesiveness among them, or inform each other of the current status of the conspiracy," further the conspiracy, *United States v. Simmons*, 923 F.2d 934, 945 (2d Cir. 1991), as do statements "that apprise a co-conspirator of the progress of the conspiracy," *United States v. Rahme*, 813 F.2d 31, 36 (2d Cir. 1987). These prerequisites need be proved only by a preponderance of the evidence. *United States v. Oren*, 32 F.3d 704, 711 (2d Cir. 1994).

Once a conspiracy is shown to exist, the "evidence sufficient to link the other defendant to it need not be overwhelming," and "the 'in furtherance' requirement of Rule 801(d)(2)(E) is satisfied" when, for example, "a co-conspirator is apprised of the progress of the conspiracy, or when the statements are designed to induce his assistance." *United States v. Paone*, 782 F.2d 386, 390 (2d Cir. 1986) (quoting *United States v. Provenzano*, 615 F.2d 37, 45 (2d Cir. 1980)). The Court is not bound by the rules of evidence in assessing a proffered co-conspirator statement, and proof as to each prong may include hearsay statements, including the statement itself, and other admissible evidence. *See Bourjaily*, 483 U.S. at 178-79 ("Congress has decided that courts may consider hearsay" in making preliminary factual determinations relevant to Rule 801(d)(2)(E)); *United States v. Cota*, 953 F.2d 753, 758 (2d Cir. 1992) (hearsay statement will be considered along with independent evidence that defendant participated in the conspiracy).

Here, even if the Court were to determine that Co-Conspirator-1's statement is inadmissible as a statement against penal interest, it is admissible as a co-conspirator statement. First, witnesses, including CW-1 and CW-2, will testify that the Victim was a high-ranking member of the MacBallas Blood set who was responsible for distributing heroin and crack cocaine in and around

the Melrose and Jackson housing developments in the Bronx. Furthermore, cooperating witnesses will testify that the Victim sold narcotics with several other individuals – both MacBallas and individuals not associated with the gang – in the area, including the defendant and Co-Conspirator-2. Indeed, Co-Conspirator-1's statements offer further proof of the existence of the underlying conspiracy: Co-Conspirator-1 explained that he and the Victim confronted the defendant and Co-Conspirator-2 over a drug debt.

Second, Co-Conspirator-1's statement was made in furtherance of the conspiracy. As an initial matter, the "Government need not show that the listener, or the person who heard the declarant's statement, was also a member of the conspiracy. *See United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1198-99 (2d Cir. 1999) (statements to listener admissible because they were designed to 'cover up' conspiracy and encourage listener not to reveal damaging information). To satisfy 801(d)(2)(E)'s "in furtherance" standard, the statements must in some way have been designed to promote or facilitate achievement of the goals of the conspiracy, including, providing information or reassurance to a co-conspirator or seeking assistance from a co-conspirator, or by communicating with a person who is not a member of the conspiracy in a way that is designed to help the co-conspirators to achieve the plans goals. *See United States v. Rivera*, 22 F.3d 430, 436 (2d Cir. 1994). In this case, CW-1 will testify that, while he was not a member of the narcotics conspiracy, he and Co-Conspirator-1 were members of the MacBallas and that several MacBallas sought to retaliate against those responsible for the Victim's death. Co-Cosnpirator-1's statement was meant to identify those involved for purposes of retaliating against them. This was in furtherance of the conspiracy in that, had the MacBallas harmed the defendant or Co-Conspirator-2, it would have sent a message to others involved in the conspiracy that refusing to pay what you owe could have very serious consequences. This would benefit members of the conspiracy in that it would enhance their reputation in the street and potentially prevent others from refusing to settle drug debts. Accordingly, Co-Conspirator-1's statement was in furtherance of the underlying narcotics conspiracy to which the defendant belonged.

V.    Conclusion

Based on the foregoing the Government respectfully submits that Co-Conspirator-1 and Co-Conspirator-2's statements are admissible as statements against penal interest and, as a result, the Government's motion should be granted. The Government further submits that, should the Court determine that neither statement qualifies as a statement against penal interest, Co-Conspirator-1's statements are nevertheless admissible as co-conspirator statements.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by:   *Christopt J. Cl*
Christopher J. Clore
Assistant United States Attorney
(212) 637-1063

cc: Defense Counsel (by ECF)